**UNITED STATES of America,
Appellant,**

v.

**MESSINA BUILDERS AND
CONTRACTORS CO., and
Mike Messina, Appellees.**

No. 85–2505.

United States Court of Appeals,
Eighth Circuit.

Submitted June 11, 1986.

Decided Sept. 23, 1986.

Bruce R. Ellisen, Washington, D.C., for appellant.

Richard B. Pener, Kansas City, Mo., for appellees.

Before JOHN R. GIBSON, MAGILL, and FAIRCHILD,* Circuit Judges.

MAGILL, Circuit Judge.

This appeal concerns whether the Internal Revenue Service ("IRS") must notify a third party, who provides the wages an employer pays its employees, of the employer's tax deficiency on those wages. For the reasons discussed below, we affirm the judgment of the district court[1] that notice is required to a third-party provider.

## I. PERTINENT STATUTES.

At the heart of this dispute are Internal Revenue Code ("Code") sections 3505 and 6303, 26 U.S.C. §§ 3505, 6303. Section 3505(a) creates tax liability in a third party who pays wages directly to an employer's employees, and section 3505(b) creates tax liability in a third party who, knowing that the employer will not or cannot pay its employees' withholding taxes, nonetheless supplies wages to the employer.[2]

Section 6303 provides in pertinent part:

§ 6303. Notice and demand for tax

(a) General rule

Where it is not otherwise provided by this title, the Secretary shall, as soon as practicable, and within 60 days, after the making of an assessment of a tax pursuant to section 6203, give notice to each person liable for the unpaid tax, stating the amount and demanding payment thereof.

Two other Code sections are integral to this issue. 26 U.S.C. § 6501, entitled "Limitations on assessment and collection," provides in pertinent part that: "the amount of any tax imposed by this title

---

* HON. THOMAS E. FAIRCHILD, United States Senior Circuit Judge for the Seventh Circuit, sitting by designation.

1. The Honorable D. Brook Bartlett, United States District Judge for the Western District of Missouri.

2. Section 3505 provides in pertinent part:
 § 3505. Liability of third parties paying or providing for wages
 (a) Direct payment by third parties
 [I]f a lender, surety, or other person, who is not an employer * * * with respect to an employee or group of employees, pays wages directly to such an employee or group of employees, * * * such lender, surety, or other person shall be liable in his own person and estate to the United States in a sum equal to the taxes * * * required to be deducted and withheld from such wages by such employer.

 (b) Personal liability where funds are supplied
 If a lender, surety, or other person supplies funds to or for the account of an employer for the specific purpose of paying wages of the employees of such employer, with actual notice or knowledge (within the meaning of section 6323(i)(1)) that such employer does not intend to or will not be able to make timely payment * * * of tax required * * * to be deducted and withheld * * *, such lender, surety, or other person shall be liable in his own person and estate to the United States * * *. However, the liability of such lender, surety, or other person shall be limited to an amount equal to 25 percent of the amount so supplied * * *.
 (c) Effect of payment
 Any amounts paid to the United States pursuant to this section shall be credited against the liability of the employer.

shall be assessed within 3 years after the return was filed * * * and no proceeding in court without assessment for the collection of such tax shall be begun after the expiration of such period." 26 U.S.C. § 6502 provides in pertinent part:

§ 6502. Collection after assessment

(a) Length of period

Where the assessment of any tax imposed by this title has been made within the period of limitation properly applicable thereto, such tax may be collected by levy or by a proceeding in court, but only if the levy is made or the proceeding begun—

(1) within 6 years after the assessment of the tax * * *.

Thus, making an assessment within the three-year time limit prescribed by section 6501 permits collection efforts up to six years after assessment, or a total of nine years after a return is filed.

## II. BACKGROUND.

In December of 1981, Messina Builders and Contractors Company, Inc. ("Messina"), a Missouri corporation engaged in general contracting and remodeling, entered into two subcontracts for the City of Kansas City, Missouri, with Dummie, Inc. ("Dummie"), a Missouri corporation owned by Charles E. Edwards ("Edwards"). Edwards also owned C & C Plumbing Company, Inc. ("C & C"), whose employees performed the work on the two subcontracts. After six months Dummie was financially unable to continue, and Messina finished the project. Edwards filed tax returns and amended returns with the IRS for the second and third quarters of 1982, reporting taxes due on the wages paid to C & C employees for their work on the project. No payment was made, however, with any of these returns.

The IRS made assessments and gave C & C notice and demand for payment of the taxes, plus interest and penalties for a total of $13,235.22. Then, more than sixty days

after having made assessments against C & C, the IRS demanded payment from Messina pursuant to section 3505(b), alleging that Messina had supplied funds to Dummie to pay the C & C employees performing the work. Messina denied the allegations and defended on the ground, inter alia, that the time limit of section 6303 had expired. The district court granted summary judgment for Messina and the United States brought this appeal.

## III. SCOPE AND STANDARD OF REVIEW.

The parties agreed in the district court that the sole issue for determination was whether the notice provision of section 6303 is a condition to the liability imposed by section 3505(b). Accordingly, we limit our review to that issue. *Rogers v. Masem,* 788 F.2d 1288, 1292 (8th Cir.1986).

When reviewing an appeal from a district court's grant of a motion for summary judgment, we apply the same standard as the district court was to have applied. *Elbe v. Yankton Indep. School Dist. No. 1,* 714 F.2d 848, 850 (8th Cir.1983). We must view all facts and reasonable inferences drawn from the facts in the light most favorable to the party opposing the motion. *Kresse v. Home Ins. Co.,* 765 F.2d 753, 754 (8th Cir.1985). Summary judgment may be granted only when there is no genuine issue of material fact and the moving party has proved he is entitled to judgment as a matter of law. *Id. See also* Fed.R.Civ.P. 56(c).

## IV. DISCUSSION.

 This issue has left the courts of appeals in disarray. The Seventh and Eleventh Circuits hold that section 6303 requires notice to a third-party lender,[3] *United States v. Associates Commercial Corp.,* 721 F.2d 1094 (7th Cir.1983); *United States v. Merchants Nat. Bank of Mobile,* 772

3. Our use of the word "lender" is not intended to limit the applicability only to lenders. We use it instead as a convenient way to refer to all persons who may be subject to section 3505 liability.

F.2d 1522 (11th Cir.1985),[4] while the Third and Ninth Circuits hold that notice to a third-party lender is not required. *United States v. Jersey Shore State Bank,* 781 F.2d 974 (3d Cir.1986), *cert. granted,* — U.S. ——, 106 S.Ct. 2273, 90 L.Ed.2d 716 (1986); *United States v. Hunter Engineers & Constructors, Inc.,* 789 F.2d 1436 (9th Cir.1986). We believe the Seventh and Eleventh Circuits espouse the better view, requiring notice to a third party.

The government advances substantially the same arguments set out in *Associates, Merchants, Jersey Shore,* and *Hunter;* in short, (1) that notice protection is only necessary for tax collection by levy, not by suit; (2) that notice to a third party is inappropriate and unnecessary; (3) that the government's right to sue for taxes, without notice and demand, is a common-law right independent of statute; (4) that requiring notice to a third party would greatly hinder the tax collection efforts of the IRS; and (5) that any prior changes in the Code did not expand the notice requirement.

Although many aspects of these arguments are persuasive and the equities are far from one-sided, these considerations must bow to the plain language and meaning of the statute, which specifies that "each person liable" for the tax must receive notice. As Judge Weis aptly stated, dissenting in *Jersey Shore:*

> The IRS wishes us to redraft that section so that it requires notice only to those individuals against whom taxes have been assessed. The reasons offered for this revision have some logic and would possibly ease administrative burdens on the government, but the arguments are directed to the wrong forum. They should be presented to Congress, not the courts.

*Jersey Shore* at 983–84 (Weis, J., dissenting).

### A. Plain language.

In *American Tobacco Co. v. Patterson,* 456 U.S. 63, 68, 102 S.Ct. 1534, 1537, 71 L.Ed.2d 748 (1982), the Supreme Court stated:

> As in all cases involving statutory construction, "our starting point must be the language employed by Congress," *Reiter v. Sonotone Corp.,* 442 U.S. 330, 337, 99 S.Ct. 2326, 2330, 60 L.Ed.2d 931 (1979), and we assume "that the legislative purpose is expressed by the ordinary meaning of the words used." *Richards v. United States,* 369 U.S. 1, 9, 82 S.Ct. 585, 591, 7 L.Ed.2d 492 (1962). Thus "[a]bsent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980).

The language in the statutes under discussion is abundantly clear. Section 3505 establishes that third parties may be liable for an employer's tax. The title of section 3505 reads: *"Liability* of third parties paying or providing for wages" (emphasis added). Both subsections (a) and (b) provide that "such [third-party] lender, surety, or other person *shall be liable* * * * to the United States" for the delinquent taxes (emphasis added). The conclusion appears inescapable that section 6303(a), when it speaks of "each person liable," includes the third-party lender. Like the Seventh Circuit in *Associates,* we conclude that Congress in section 3505 "established a nexus between the taxpayer's obligation and the lender's liability," *Associates* at 1097, and that the same limitations period should apply to both, for the requirement of notice to "each person liable for the unpaid tax" is clear in requiring notice to the third party.

### B. Administrative proceeding v. lawsuit.

■ The government argues that notice is only necessary for administrative collections such as levy or distraint, where the government may proceed summarily, and

---

**4.** The Eleventh Circuit in *Merchants,* in a short per curiam opinion, simply "agree[d] with the Seventh Circuit's reading of the applicable statutory provisions * * *." *Merchants* at 1524.

that where the government must proceed by lawsuit, as with section 3505, service of the complaint provides adequate notice. The *Jersey Shore* court also distinguished between tax collection by administrative process and tax collection by lawsuit, pointing out that "the predecessor statute to section 6303(a) explicitly applied only to the collection efforts of the tax Collector, who by statute was authorized to collect taxes solely by administrative means, such as levying on the taxpayer's property. I.R.C. § 3655 (1952)." *Jersey Shore* at 979.

We disagree. The plain language of section 6303(a) does not support the position set forth in *Jersey Shore* and argued by the government. The *Associates* court stated that:

Section 6303(a) itself does not indicate that the right to notice is dependent on which tax collection option the government uses. * * * Section 6303(a) requires notice of the assessment of unpaid taxes in order to protect the person liable for paying the taxes, * * * and this rationale applies regardless of which collection mechanism is used.

*Associates* at 1100.

Our interpretation finds support in the mechanics of sections 3505 and 6303. Without notice, a third party could wait up to nine years after the employer files a return to learn of his potential liability. As Judge Will stated in the district court in *Associates*, "[t]he possibility of prejudice is obvious. Records and personnel may no longer be available. The opportunity to mitigate by making voluntary payments is lost. Interest mounts. The possibility of recovering from the borrower-employer diminishes. All of these would be obviated by notice." *Associates*, 548 F.Supp. 171, 174 (N.D.Ill.1982).

### C. Applicability to third-party lender.

The government, following the reasoning of the Third Circuit in *Jersey Shore*, argues that section 6303(a) was not intended to apply to a third-party lender. The *Jersey Shore* court noted that "a section 6303(a) notice consists of two discrete elements: (i) notice of the amount that has been assessed and (ii) a *demand* that the individual receiving the notice *presently* satisfy that assessment." *Jersey Shore* at 978 (emphasis in original). The *Jersey Shore* court noted that the amounts of the employer's and the lender's tax liability will probably differ because the lender is not liable for the employer's portion of payroll taxes and because section 3505(b) limits lender liability to twenty-five percent of its loan. The court reasoned that notifying the third party of the employer's liability would be misleading and inappropriate. The court also noted that section 6303(a) does not demand payment from the third-party lender; rather, the government seeks at that time to collect only from the employer. The court was persuaded by these factors that Congress did not intend third-party lenders to receive notice of assessment.

We disagree, finding an alternative interpretation equally plausible. A party receiving 6303(a) notice learns two things: that the government is seeking payment of delinquent taxes, and the amount of those delinquent taxes. The third party presumably will know that the employer is the source of the liability and thus has the opportunity to contact the employer and attempt to correct the situation, or at least, to stop advancing sums to the employer and thus lessen the total amount of liability. The notice provided to a third party, notifying him that the employer is delinquent and that the IRS is demanding payment for the amount the employer owes, thus serves an important function. To minimize the possibility that a third party will misinterpret the notice as a demand that the third party immediately pay a larger sum than he may owe, it would not be overly burdensome for the IRS to amend the notice to include explanatory information relating to the legal status of the third-party lender.

### D. Requirement of knowledge by third party.

■ The government next argues that because section 3505 requires a third party

to have knowledge of the employer's financial state, the possibility for prejudice to the third party is nonexistent and additional notice would "serve no useful purpose." As the *Jersey Shore* court stated, "section 3505 liability only arises if the third party * * * is * * * actually or constructively aware of its *potential* liability for the taxes required to be deducted and withheld." *Jersey Shore* at 982 (emphasis in original).

The definition of "actual" knowledge in section 3505 is so broad, however, as to create liability even with no actual knowledge. The Ninth Circuit in *Hunter* admitted that "we agree that this statutory scheme does not wholly negate the possibility of prejudice to the lender * * *." *Hunter* at 1441. Section 3505(b) requires the lender to have "actual notice or knowledge (within the meaning of section 6323(i)(1))" that the employer did not intend to or could not pay the taxes. Code section 6323(i)(1) provides that an organization is deemed to have actual notice of a fact that would have been brought to its attention had it exercised due diligence. Thus, a lender who has no actual knowledge of the employer's failure to pay the tax but who has failed to exercise due diligence is nonetheless subject to section 3505(b) liability.

Alternatively, as Judge Will pointed out in the district court in *Associates*, "the mere fact that a lender is aware * * * that the government has filed a claim for unpaid withholding taxes is hardly notice to the lender that the government will seek to hold it liable under section 3505(b) * * *." *Associates*, 548 F.Supp. at 174–75. Notice is therefore necessary to lenders regardless of their actual knowledge of the employer's liability. As Messina points out, even assuming the lender knows of his potential liability under section 3505(b), the government still must provide notice upon assessment for the same reason that the government, upon making an assessment against a taxpayer who has filed a return but who has failed to pay in full, must still give notice to the taxpayer even though he is aware of his tax liability.

**E. Government's common-law right to sue.**

The government argues that it has a common-law right, existing independently of any statute, to sue on a debt. The government points out that no statute makes a suit by the United States to collect tax dependent on notice and demand, and thus a failure to assess or give notice will not bar a suit. This argument, however, ignores the fact that section 3505 creates a derivative liability, nonexistent at common law. As the Eleventh Circuit stated in *Merchants:*

> The United States also argues that even if § 6303(a) requires notice to third-parties such as MNB, the failure to give notice does not preclude suit to collect on MNB's alleged § 3505 liability. The United States contends that it has an inherent common law right to sue to collect debts which is entirely independent of the assessment process. Appellant, however, ignores the fact that third-party derivative liability of the sort set forth in § 3505 is a creature of statutory, not common, law. This argument is therefore untenable.

*Merchants* at 1524 n. 1.

We thus reject the government's attempt to recharacterize the third-party liability imposed by section 3505.

**F. Administrative burden.**

The government next argues that the increased administrative burden imposed by third-party notice "would effectively render section 3505 a dead letter." The *Associates* court called a similar claim "highly speculative and unsupported by any convincing statistics." *Associates* at 1099. The *Jersey Shore* court disagreed, stating that "in light of the manner such taxes are collected, available statistics and common sense both dictate that such a requirement would impose a prohibitory investigative burden on the government." *Jersey Shore* at 983. Although we recognize that a third-party notice requirement imposes an increased burden upon the IRS, this burden is not an unreasonable one.

The IRS could modify its forms, pursuant to Code section 6011(a), to obtain information from the employer identifying any third-party lenders. Lenders listed on these returns could then be given a "protective" notice and demand, notifying them of their potential liability and demanding payment only if their loans violate section 3505. The IRS could also make separate assessments of the lenders' section 3505(b) liability.[5] Because section 6501 allows a separate assessment to be made within three years from the time the employer's return is filed, this would give the IRS reasonable time to proceed. The IRS could, alternatively, make a supplemental assessment pursuant to Code section 6204(a), which permits a supplemental assessment "whenever it is ascertained that any assessment is imperfect or incomplete in any material respect."

By using either a separate or a supplemental assessment, the IRS could first quickly assess the employer, thereby avoiding a delay that "would seriously jeopardize the government's interest in collecting the taxes from the employer, because such a practice would enable other creditors to obtain prior liens against the employer's property." *Jersey Shore* at 983. The IRS would then have three years in which to investigate the employer and file a separate or supplemental assessment, then provide notice to the third party. This result would give the IRS time to conduct a full investigation while shortening the time the third party is unaware of its potential liability from nine years to a more equitable three years.

### G. Legislative history.

We next address the government's interpretation of the legislative history. The government points out that although the predecessor to section 6303(a) was revised to become section 6303(a) in the 1954 Code, the Committee Reports stated that section 6303 "contains two changes from existing law," neither of which is pertinent to the issue of notice to a third party. H.R.Rep. No. 1337, 83d Cong., 2d Sess. A405–06, *reprinted in* 1954 U.S. Code Cong. & Ad. News 4017, 4553; S.Rep. No. 1622, 83d Cong., 2d Sess. 574, *reprinted in* 1954 U.S. Code Cong. & Ad. News 4621, 5222–23. The government concludes from this that because the predecessor to section 6303(a) required notice only to an assessed party, therefore section 6303(a) also requires notice only to an assessed party, *i.e.*, the employer. We decline to accept this somewhat scant legislative history as dispositive. First, section 3505 did not exist when section 6303(a) assumed its present form, so it is fruitless to speculate as to whether section 6303(a) was intended to apply to section 3505. Second, contrary to the government's assertion, it is unclear whether the predecessor to section 6303(a) would have required notice only to an employer in the context of a collection arising under section 3505.

We find, moreover, that the legislative history offers equal support for our position. The *Hunter* court noted that "[w]hile * * * statements [in the legislative history] are unequivocal and clearly indicate Congress' intent that lenders be liable within the ambit of section 3505(b), they do not indicate whether lenders are due the notice specified in section 6303(a)." *Hunter* at 1439. Unlike the *Hunter* court, we find that the plain language of section 6303(a) expresses the congressional intent that third-party lenders receive notice. Moreover, the absence of clear support in the

---

**5.** We disagree with the Ninth Circuit's holding in *United States v. Dixieline Financial, Inc.,* 594 F.2d 1311, 1312 (9th Cir.1979), that because the assessment against the employer represents "the amount of the only sum in question," thus "independent assessment [against the third party] would accomplish nothing." As the Third Circuit acknowledged in *Jersey Shore,* the amount of the lender's liability will probably differ from the amount of the employer's liability, because of "both the differences between the taxes for which the employer and third party are liable and the limitations on liability contained within section 3505 itself." *Jersey Shore* at 978. Thus an independent assessment of the lender's liability has substantial informative value, and would allow the IRS to give the lender timely notice of that assessment and thereby maintain a section 3505(b) action.

legislative history for the government's position must be construed against the government. "[C]ongressional silence, no matter how 'clanging,' cannot override the words of the statute." *Sedima, S.P.R.L. v. Imrex Co., Inc.,* —— U.S. ——, 105 S.Ct. 3275, 3285 n. 13, 87 L.Ed.2d 346 (1985). In sum, we find that the legislative history, which is inconclusive at best, falls far short of the showing required to overcome the plain language of the statutes under discussion.

For the foregoing reasons, we agree with the view held by the Seventh Circuit in *Associates,*[6] and followed by the Eleventh Circuit in *Merchants,* that the IRS must provide timely notice to a third-party lender when proceeding under section 3505(b).

FAIRCHILD, Senior Circuit Judge, dissenting.

Because I find the reasoning of *United States v. Jersey Shore State Bank,* 781 F.2d 974 (3rd Cir.1986), *cert. granted,* —— U.S. ——, 106 S.Ct. 2273, 90 L.Ed.2d 716 (1986) and *United States v. Hunter Engineers & Constructors, Inc.,* 789 F.2d 1436 (9th Cir.1986) more persuasive, I must respectfully dissent.

I add only two observations concerning the language at issue:

(1) An assessment is a determination that one or more persons are liable for a tax. It seems a natural reading of § 6303(a) that "each person liable for the unpaid tax" means each person whose liability has been determined by the assessment referred to. The facts essential to liability of third-party providers are not determined by the assessment.

(2) Section 3505 does not, literally, make the third-party provider "liable for the unpaid tax," but "liable * * * in a sum equal to the taxes."

---

**6.** We note that the *Associates* court, in reaching its holding, followed what it perceived to be the Ninth Circuit's reasoning in *United States v. Dixieline Financial, Inc.,* 594 F.2d 1311 (9th Cir. 1979), that notice to a third-party lender is required. The Ninth Circuit subsequently clarified its position in *Hunter,* stating:

> Admittedly, our language can be interpreted to imply that notice to lenders is required. Indeed, courts have relied in substantial part on *Dixieline* to conclude that notice to lenders

is required [citations omitted]. We believe that reliance was misplaced. * * * *Dixieline* does not alter our conclusion today that section 6303(a) does not require notice to third party lenders facing potential liability under section 3505.

*Hunter* at 1440. Our reading of *Associates,* however, convinces us that its reasoning stands firm despite the loss of *Dixieline* to support its decision.